## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## COLUMBUS DIVISION

ARTHUR GOULD,                         :
                                      :
            Plaintiff,                :
                                      :
v.                                    :        CASE NO. 4:08-CV-155 (CDL)
                                      :
JAMES DONALD, *et al.,*               :          42 U.S.C. § 1983
                                      :
            Defendants.               :

## REPORT AND RECOMMENDATION

Before the court is Defendants' Motion to Dismiss Plaintiff's action. (R-26).  Plaintiff

was notified of his right to respond, and said Response was filed on March 18, 2009.  (R-30).

## LEGAL STANDARD FOR MOTION TO DISMISS

The standard for a Motion to Dismiss was altered by the United States Supreme Court

in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  The Court of Appeals for the

Eleventh Circuit addressed the new standard in *Financial Sec. Assur., Inc. v. Stephens, Inc.*,

stating:

> In order for a plaintiff to satisfy his "obligation to provide the
> grounds of entitlement to relief," he must allege more than
> "labels and conclusions"; his complaint must include "[f]actual
> allegations [adequate] to raise a right to relief above the
> speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct.
> 1955, 1964-65, 167 L.Ed. 2d 929 (May 21, 2007) (citations and
> quotations omitted).  Stated differently, the factual allegations
> in a complaint must "possess enough heft" to set forth "a
> plausible entitlement to relief," 127 S.Ct. at 1966-67.  Moreover,
> "while notice pleading may not require that the pleader allege a
> 'specific fact' to cover every element or allege 'with precision'
> each element of the claim, it is still necessary that a complaint
> 'contain either direct or inferential allegations respecting all the

> material elements necessary to sustain a recovery under some
> viable legal theory.'" *Roe v. Aware Woman Ctr. For Choice,
> Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quoting *In re Plywood
> Antitrust Litig.*, 655 F.2d 627, 641 (5th Cir., Unit A Sept. 8,
> 1981)).

500 F.3d 1276, 1282-83 (11th Cir. 2007).

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  In ruling on a motion to dismiss for failure to state a claim, the analysis "is limited primarily to the face of the complaint and attachments thereto." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1368 (11th Cir. 1997).  The Court must "constru[e] the complaint in the light most favorable to the plaintiff and accept [] as true all facts which the plaintiff alleges." *Day v. Taylor*, 400 F.3d 1272, 1275 (11th Cir. 2005).  Nevertheless, if a complaint does not include sufficient factual allegations "to raise a right of relief above the speculative level" and "to raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claim or claims, then the complaint must be dismissed.  *Watts v. Fla. Int'l Univ,* 495 F.3d 1289, 1295-96 (11th Cir. 2007); citing *Bell Atlantic Corp*., 127 S.Ct. at 1965.

## FACTUAL BACKGROUND

On October 17, 2008, Plaintiff filed this 42 U.S.C. § 1983 suit against the named Defendants in the United States District Court for the Northern District of Georgia.  (R-1).  On November 18, 2008, the case was transferred to this court.  (R-3).  In his complaint, Plaintiff, who admits he has mental health issues, alleges that while serving a sentence of life

imprisonment, he was allowed to complete a work release program to obtain parole. (R-6-2). Plaintiff states that he completed the work release program on June 20, 2008. *Id.* Plaintiff alleges that while on his work release program, a business nearby was robbed by a fellow inmate. *Id.* Plaintiff states when that he informed Defendants Slaughter, Flemming, and De Vanlinger of the robbery, he was warned to "leave it alone." *Id.* Plaintiff states that he was thereafter denied parole and returned to Rutledge State Prison. *Id.* In his amended and supplemental complaints, Plaintiff alleges that he was told by Defendants that if he continued to pursue the matter, he would be "given a shot", his security level would be increased, and he would be transferred to a maximum security prison. (R-14). Plaintiff further asserts that he was denied access to the courts, that inmates are given shots as punishment, that sexual abuse is ignored by the prison officials, that black inmates are treated less favorably in the prison system, and that a Pope medal, Bible, shoes and rosary were taken from him. (R-14, 22). Plaintiff also alleges that he has been threatened with retaliation, that his legal mail was withheld from him, that the Defendants failed to complete a parole summary for him, and that he is forced to "pay" each time he goes to the commissary to avoid being raped or assaulted. *Id.* Plaintiff seeks to be released from prison, the return of personal property which he claims the Defendants took, and monetary compensation in the amount of $1,000,000, for compensatory damages, and $3,000,000, in punitive damages. (R-6-2, 10).

After the filing of Defendants' Motion to Dismiss, Plaintiff filed two "Emergency Letters" with the court claiming that he was sexually assaulted on February 18, 2009, his "security was raised," and he was put on lock-down in retaliation for filing this case. (R-29,

3

32).  Plaintiff then states that he was transferred to Valdosta State Prison to cover up the allegations he has made.  *Id.*

Plaintiff filed his Response to Defendants' Motion to Dismiss on March 18, 2009 (R-30), and has further filed: a Memorandum in support of his Complaint (R- 44) filed on April 2, 2009; "Plaintiff's Reply and Response to Defendants' Response to Plaintiff's Pleadings to Claims" (R-46) filed on April 7, 2009; another Memorandum in Support of Complaint (R-48); and Plaintiff's Response to Defendants' Response to Motion to Amend (R-50).  Plaintiff has also filed various motions, including: a Motion for Protective Order and a Motion to Produce Video (R-36); a Motion for Warrants and Investigation (R-38); a Motion to Dismiss Defendants' Motion to Dismiss (R- 41); another Motion to Amend (R-45); a Motion for Court Order for Plaintiff['s] Legal Materials (R-51); a Motion for Court Ordered Investigation (R-52); and a Motion for Court to Review Video (R-53).

## DISCUSSION

## I.    Exhaustion of Administrative Remedies

Rule 12(b)(1) provides that a defendant may raise any and all defenses regarding "lack of jurisdiction over the subject matter."  Although the Eleventh Circuit has not ruled on this matter directly, the Ninth Circuit Court of Appeals, in *Wyatt v. Terhune,* 315 F. 3d 1108, 1119-20 (9th Cir. 2003), *cert. denied,* 124 S.Ct. 50 (2003), held:

> We next address the form of pretrial motion to be used to resolve the State's contention that the prisoner has failed to exhaust his administrative remedies.  In this Circuit, we have held that the failure to exhaust nonjudicial remedies that are not jurisdictional should be treated as a matter in abatement, which

4

is subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment. *See Ritza v. Int'l Longshoremen's & Warehousemen's Union,* 837 F.2d 365, 368 (9th Cir. 1988). (citations omitted). These decisions are based on the general principle that "summary judgment is on the merits," (cite omitted) whereas, "dismissal of an action on the ground of failure to exhaust administrative remedies is not on the merits." (citations omitted). In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. *See Ritza,* 837 F.2d at 369. If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice. *See id.* at 368.

Thus, a motion to dismiss based upon a plaintiff's failure to exhaust his administrative remedies, which pleads a lack of jurisdiction, is properly filed as an unenumerated Rule 12(b) motion.

Defendants in the current case contend that Plaintiff failed to exhaust his available administrative remedies with regard to several of his claims, and, as such, Plaintiff's claims must fail. (R-80-2, p. 4). By the *Prison Litigation and Reform Act* (PLRA*),* Congress has provided that, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The United States Supreme Court has consistently held that where Congress explicitly mandates, a plaintiff must exhaust the administrative remedies available to him before he is authorized to file a lawsuit in federal court. *McCarty v. Madigan,* 503 U.S. 140, 144 112 S.Ct. 1081, 1086 (1992). The Eleventh Circuit Court of Appeals, following the Supreme Court rulings and the PLRA, has

5

held that "since exhaustion is now a precondition to suit, the courts cannot simply waive those requirements . . . ." *Alexander v. Hawk,* 159 F.3d 1321, 1326-27 (11th Cir. 1998).

The United States Supreme Court has held that an inmate must *properly* exhaust all available administrative remedies before he can file a 1983 lawsuit in federal court. *Woodford v. Ngo*, 126 S.Ct. 2378 (2006). In *Woodford*, an inmate at a California state prison filed a grievance regarding prison conditions which was rejected as untimely. *Id.* at 2380. The inmate thereafter filed suit pursuant to § 1983 against the prison officials. *Id.* The District Court held that because the inmate had failed to timely exhaust all of his available remedies, the case should be dismissed. *Id.* The Ninth Circuit Court of Appeals reversed the lower court's decision, finding that the inmate had no further administrative remedy available to him after his grievance was rejected as untimely. *Id.* The high court ultimately reversed the Ninth Circuit, finding that, just as in habeas corpus cases, the remedies available to the inmate must be **fully and properly** exhausted. *Id.*

Recently, the Eleventh Circuit Court of Appeals, in *Turner v. Burnside*, based on its decision in *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), determined that there is now a two-step process for deciding a Motion to Dismiss for failure to exhaust administrative remedies. *Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). Specifically, the Court held:

> In the first step, the court reviews the factual allegations in the motion to dismiss and the plaintiff's response and, if they conflict, accepts the plaintiff's factual allegations as true. If, based on those facts, the plaintiff failed to exhaust administrative remedies, the court must dismiss the complaint. If the complaint survives the first level of review, then the court makes findings to resolve disputes of fact related to exhaustion.

> In this second step, the defendant must prove that the plaintiff
> failed to exhaust his available administrative remedies. After the
> court makes its findings of fact, the court decides whether the
> prisoner has exhausted his available administrative remedies.

*Williams v. Marshall*, 2008 WL 4787152, at *3 (11th Cir. November 4, 2008)(citing *Burnside*

at 1082).

In this case, Defendants have provided an affidavit by Debbie King, the Chief

Grievance Counselor at Rutledge State Prison, which confirms that the Georgia Department

of Corrections has an administrative grievance system. (R-26-3). A review of the Georgia

Department of Corrections Standard Operating Procedure IIB05-0001 on Inmate Grievances,

which regulates the grievance process in all Georgia prisons, reveals that an inmate must

exhaust an "Informal Complaint Procedure" before proceeding to a "Formal Grievance

Procedure." (R-26-4). After a decision is rendered regarding the informal grievance, the

inmate may procure a formal grievance form from a prison counselor. *Id.* There further

exists an appeal process for inmates who are not satisfied with the outcome of the formal

grievance. *Id.* For an inmate to fully exhaust his administrative remedies, therefore, he must

complete all three steps of the grievance procedure.

As to the first step of the *Burnside* test, then, the affidavit of Debbie King avers that

Plaintiff did not exhaust the administrative grievance procedure. *Id.* Specifically, King's

affidavit states that although Plaintiff filed several informal grievances, he never filed a

single formal grievance while incarcerated at Rutledge State Prison. (R-26-3, ¶ 23). Affiant

King further avers that Plaintiff has filed more than forty formal grievances at various other

7

prisons since 1996, and has never demonstrated a need for assistance with filing grievances while incarcerated at Rutledge State Prison. *Id.* at ¶ 24.

In his Response to the Defendants' Motion to Dismiss for his failure to exhaust the grievance procedure, Plaintiff merely states that

> "The [Defendants] have stated that Plaintiff never ask for a 'Formal Grievance' each time he ask he wasn't given one saying time-limit had expired. Defendant Keyes would never give me one, also in the Defendants' Exhibits on Grievances filed Ms. King never saw me and Plaintiff don't know her, their Exhibits show Defendant Keyes's signature, not hers and their Exhibits show Defendant Keyes process all Plaintiff's Grievances and Counselor Sharpe, not Ms. Debbie King, as stated in her 'affidavit' see Defendants' Exhibit Affidavit Exhibit A in Defendants' Motion to Dismiss."

(R-30, p. 5). In reviewing the pleadings pursuant to step one of the *Burnside* standard, it appears that the parties' versions of the facts do conflict. Thus, the court is required to proceed to step two to make specific findings of fact to determine whether Plaintiff failed to exhaust the grievance procedure.

As stated *supra*, Defendants contend that Plaintiff has filed six informal grievances while incarcerated at Rutledge State Prison. (R-26-2, p. 10). Those grievances, submitted as exhibits to Defendants' Motion to Dismiss, involve claims that money was improperly taken from Plaintiff's account, that he had not been seen by a mental health counselor, that his roommate had been threatening other inmates, that his phone list had not been updated, that he had received late notification by the Parole Board to deny his parole, and that he had been denied access to the law library. (R- 26; Exhibits 2-7). Defendants further argue that

Plaintiff was well aware of the grievance procedure in place at the time the alleged violations occurred because he had filed more than forty formal grievances while imprisoned at other Georgia prisons since 1996, and attach Plaintiff's grievance history as an exhibit. *Id.* at 11. Plaintiff attempts to circumvent his failure to exhaust the grievance procure by claiming that the Defendants would not provide him formal grievance forms when he asked for them. (R-30, p. 5). Defendants, however, presented evidence to establish that following the submission of five of his informal grievances, Plaintiff signed the forms indicating that his grievance has been resolved. (R-26-5, 26-6, 26-7, 26-8, 26-10). As to the sixth informal grievance, Plaintiff indicated that the issue had not been resolved and requested a formal grievance form but failed to actually file the formal grievance. (R-26-9). In his Response, Plaintiff further contends that "once Plaintiff's rights [were] violated as stated in his claim, he didn't have to go through (sic) exhausting any state remedies. . ." (R-30, p. 8).

Pursuant to the holding in *Burnside*, the court finds that the Defendants have met their burden of establishing that Plaintiff failed to exhaust his available administrative remedies. Therefore, it is recommended that the claims in Plaintiff's complaint which were required to be exhausted through the grievance procedure be DISMISSED for Plaintiff's failure to timely exhaust his administrative remedies. Having failed to exhaust said remedies, this court is without the jurisdiction to review the allegations found in his original, amended, and supplemental Complaints.

## II.    Failure to State a Claim

In the remaining claims, Plaintiff contends that his rights were violated where: the

9

parole board denied him parole after he completed a work release program; he is being retaliated against because he reported a crime; he has been denied a "*Vitek*" hearing which he claims is required prior to being classified as a mental health inmate; personal property was taken from him by the Defendants at Rutledge State Prison and not returned; Defendants failed to separate him from violent inmates; he had to "pay" each time he went to the commissary at Rutledge State Prison to avoid being assaulted; he has been denied access to the courts; and he has been discriminated against because he is black, Catholic and mentally handicapped. (R-1, 14 and 23).

### A.    Parole Decision

Plaintiff claims that he was unconstitutionally denied parole after the Georgia Board of Pardons and Paroles provided him a tentative parole date following his completion of a work release program.  The Eleventh Circuit Court of Appeals has held, however, that "there is no federal constitutional right to parole."*Jones v. Ray,* 279 F.3d 944, 946 (11th Cir.2001) (citing *Greenholtz v. Inmates of Neb. Penal & Corr. Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979)).  Where there is no liberty interest in parole, "the procedures followed in making the parole determinations are not required to comport with the standards of fundamental fairness." *O'Kelley v. Snow,* 53 F.3d 319, 321 (11th Cir.1995). "[C]onduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Waddell v. Hendry County Sheriff's Office,* 329 F.3d 1300, 1305 (11th Cir.2003). " [O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense. "

10

*Id.* (citation omitted). Furthermore, in *Vargas v. Morris*, the Georgia Supreme Court held that a tentative release date is not a grant of release nor does it create a claim of entitlement to parole, and, as such, no due process rights are violated when the Board makes the decision to change said date. *Vargas*, 266 Ga. 141, 465 S.E.2d 275 (1996). Thus, to the extent that Plaintiff claims he was unconstitutionally denied parole, he has failed to state a claim upon which relief may be granted.

### B.    Retaliation

Plaintiff's pleading in this case contain claims that he is being retaliated against because he reported a crime while on work detail. (R-1, 14, 23). Plaintiff contends that while participating in a work release program, he informed employees of the transitional center of a robbery that was committed by a fellow inmate. (R-22-2). He claims that because he reported the crime, his parole was denied, and he was returned to Rutledge State Prison. *Id.*

The record reveals that Plaintiff was **tentatively** granted parole by the State Board of Pardons and Paroles on July 25, 2007, "upon successful completion of the Department of Corrections work release program." (R-14, p. 13). The Board notified Plaintiff in the same letter that it reserved the right to change its decision in his case at any time. *Id.* Plaintiff completed the work release program on June 20, 2008. *Id.* at 15. On August 15, 2008, Plaintiff was notified that the Board had reconsidered his case and had ultimately decided to deny parole pursuant to O.C.G.A. § 42-9-42(c), finding that his release would not be

compatible with the welfare of society.  (R-14, p. 14).

The Eleventh Circuit Court of Appeals, in ruling on cases of retaliation, has held that "[t]he First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West,* 320 F.3d 1235, 1248 (11th Cir.2003). The Court has further held:

> It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement. It is also established that an inmate may maintain a cause of action against prison administrators who retaliate against him for making such complaints.  To prevail, the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech.

*Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).  To establish causation, there must exist "proof of an affirmative causal connection between the actions taken by a particular person 'under color of state law' and the constitutional deprivation." *LaMarca v. Turner,* 995 F.2d 1526, 1538 (11th Cir.1993) (quoting *Williams v. Bennett,* 689 F.2d 1370, 1380 (11th Cir.1982)).  "Conclusory allegations without specific supporting facts have no probative value." *Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir.2000) (citation omitted).

Here, Plaintiff has failed to establish any causal relationship between the denial of his

parole and his reporting that a crime had taken place.  First, Plaintiff's parole was denied by the Georgia State Board of Pardons and Paroles, not the officials to which he reported at the Transitional Center.  Furthermore, Plaintiff has not established that the Parole Board had any knowledge that he had reported a robbery to the officials at the La Grange Transitional Center.  Lastly, as stated above, Plaintiff has no constitutional right to parole.  As Plaintiff had been informed, the Parole Board's decision to deny parole at that time was completely within its discretion.  Even  assuming *arguendo* that his parole denial was based, in part, on the report that he made, Plaintiff has not demonstrated that the Board acted unlawfully in considering the same when it denied him parole.  Therefore, Plaintiff's retaliation claims should be dismissed.

## C.    Deprivation of Property

Plaintiff also claims that upon his transfer to Valdosta State Prison, several items of his personal property were taken and not returned.[1]  (R-14, p. 9).  Specifically, in his Response to Defendants' Motion to Dismiss, Plaintiff states that after he was transferred from Rutledge State Prison to Valdosta State Prison, his clothes were sent, but he never received his shoes or his other personal property.  (R-30, p. 5).  He further contends that his legal materials have not been returned to him.   *Id.*  In response to Plaintiff's claims, Defendants have submitted evidence in the form of affidavits and two Inmate Personal Property Inventory forms and an Inmate Property Disposal Agreement, to establish that all

---

[1]Plaintiff has since, along with several other motions, filed a "Motion for a Court Order for Plaintiff['s] Legal Materials" wherein he seeks the return of legal materials he claims the Defendants have kept from him. (R-51).

of his personal property, including his tennis shoes and any legal materials which were in his possession, were returned to him upon his completed transfer to Valdosta State Prison.  (R-33, Attachments 11-14).

Furthermore, the United States Supreme Court has held that a prisoner's claim for deprivation of his property does not amount to a violation of due process under the United States Constitution provided that the following two circumstances are present:  (1) the deprivation of property resulted from an intentional, non-negligent act of a state employee that is random and unauthorized, rather than pursuant to an established state procedure; and (2) the state provides an adequate post-deprivation property remedy for the prisoner's property loss. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981).  The State of Georgia provides adequate post-deprivation remedies whereby Plaintiff may sue the defendants in the state courts and recover any damages due him for the loss of his property.  *See* O.C.G.A. § 51-10-1.  Such a cause of action still remains available to Plaintiff.[2]  Thus, because an adequate post-deprivation remedy exists in Georgia state courts, no procedural violation can be found to have occurred in violation of the Fourteenth Amendment in this case.

## D.    Access to the Courts

Plaintiff's various pleadings also allege that he was denied access to the courts where prison officials attempted to keep him from making copies of court documents in the library,

---

[2]  O.C.G.A. § 9-3-32 provides:  "Actions for the recovery of personal property, or for damages for the conversion or destruction of same, shall be brought within four years after the right of action accrued."

read his legal mail, held his request for reconsideration of his denial of parole, and threatened him for corresponding with the court regarding his lawsuit.  (R-14, pp. 2, 8; R-22-2, p. 1; R-22-3, p. 1-3).

The United States Supreme Court has held that prisoners have a constitutional right of access to the courts.  *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 1498-1500, 52 L.Ed.2d 72 (1977).  The *Bounds* Court held that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law or by other means. *Id.*  "The limited types of legal claims protected by the access-to-courts right [are] nonfrivolous appeals from a conviction, habeas petitions, or civil rights suits." *Al-Amin v. Smith,* 511 F.3d 1317, 1332 (11th Cir. 2008).

The Eleventh Circuit Court of Appeals has held that a constitutional prerequisite to a claim of denial of access to the courts is that the complainant must have suffered an "actual injury." *Id.*  The Court further stated that "[I]n order to show actual injury, 'a plaintiff must provide evidence of such deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials.'" *Id; citing Wilson v. Blankenship,* 163 F.3d 1284, 1290 (11th Cir. 1998).  The Court has noted that missing filing deadlines is an example of an actual injury. *Wilson*, 163 F.3d at 1291 n.10.

In this case, Plaintiff has failed to show that the alleged actions of the Defendants, *i.e.*,

that they attempted to keep him from making copies of court documents, read his legal mail[3], held his request for reconsideration of his denial of parole, and threatened him for corresponding with the court regarding his lawsuit, caused him any actual harm. Furthermore, the sheer volume of the motions and other documents Plaintiff has filed in furtherance of his claims contradicts any allegation or implication that he was denied access to the courts. Therefore, Plaintiff's conclusory allegations with regard to his claims of denial of access to the courts in his complaint fail to state cognizable claims under 42 U.S.C. § 1983.

### E.    *Vitek* Hearing

Plaintiff also alleges that he was unconstitutionally denied a "*Vitek* hearing" prior to being classified as a Level III mental health inmate.  (R-6-2; 23).  Plaintiff relies on the United States Supreme Court ruling in *Vitek v. Jones* that an inmate is entitled to due process prior to being classified as mentally ill and transferred to a mental hospital.  *See Vitek v. Jones*, 445 U.S. 480, 492-493 (1980).  Specifically, the *Vitek* Court considered whether the State of Nebraska violated the due process rights of a convicted felon when it transferred him against his will to a mental hospital and ultimately found that such a transfer implicated a liberty interest under the Fourteenth Amendment.  *Id.*

In this case, Plaintiff, who admits that he has a mental health disability, does not allege that he was involuntarily transferred to a mental health hospital, but merely alleges he

---

[3]This allegation did not include opening mail from Plaintiff's attorney, which would have invoked his First Amendment rights pursuant to *Al-Amin v. Smith,* 511 F.3d 1317 (11th Cir. 2008).

was unconstitutionally classified as a Level III inmate without due process.  The Courts, however, have held that inmates fail to state a due process claim in these situations because the inmate has no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison. *See Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976) (no due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison); *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976) (prison officials have full discretion to control conditions of confinement, including prisoner classification) (citing 18 U.S.C. § 4081).  Having failed to establish that his due process rights were invoked, much less violated, Plaintiff's claim that he was entitled to a hearing prior to being classified as a mental health inmate must fail.

## F.    Discrimination

Plaintiff's complaint also contains claims that he was discriminated against because of his race, religion and mental disability, and further claims that white inmates are treated more favorably.  (R-14, 2, 10; R-23, p. 3).

The Eleventh Circuit Court of Appeals has held that claims of discrimination are analyzed under the equal protection clause of the 14th Amendment to the United States Constitution. *See Jones v. Ray,* 279 F.3d 944 (11th Cir. 2001).  The equal protection clause prohibits a state from denying "to any person within its jurisdiction the equal protection of the laws."  Equal protection implies that some law or policy of the state operates with unequal effect or that someone under the authority of the state is acting in a discriminatory

manner.  *See Griffin v. State of Maryland*, 378 U.S. 130, 84 S. Ct. 1770 (1964).  The Court ruled that "[t]o establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." *Jones,* 279 F.3d at 946,947, citing *Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986).

As was noted *supra*, if a complaint does not include sufficient factual allegations "to raise a right of relief above the speculative level" and "to raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claim or claims, then the complaint must be dismissed.  *Watts v. Fla. Int'l Univ,* 495 F.3d 1289, 1295-96 (11th Cir. 2007); citing *Bell Atlantic Corp*., 127 S.Ct. at 1965.   In this case, Plaintiff's allegations regarding discrimination are conclusory at best.  In his Amended Complaint, Plaintiff alleges that he was discriminated against  "Because of the allegations and Civil Rights and Constitutional violations and discrimination because of my mental health disability.  I was discriminated because of that. And being black and a catholic."  (R-14, p. 2).  Subsequently, in his Supplemental Complaint, Plaintiff states that "there is more protection [from fear of being assaulted] if you is white."  (R-23, p. 2).  The Supreme Court has specifically stated that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544  (2007).

18

"Furthermore, the plaintiff's factual allegations, when assumed to be true, 'must be enough to raise a right to relief above the speculative level.' "*Id.*  Because Plaintiff failed to provide more than conclusory allegations, his claims of discrimination fail to state a claim upon which relief may be granted.

### G.    Threats by other Inmates

Plaintiff's complaints also contain claims that the Defendants failed to separate him from violent inmates at Rutledge State Prison,  that he had to "pay" each time he went to the commissary to avoid being assaulted, and that assault and sexual abuse is overlooked.  (R-14, p. 9; R-23, p. 2).   In order to prevail on this constitutional claim and to recover in this case, Plaintiff must establish that the defendants were deliberately indifferent to his needs. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).  The United States Supreme Court has further held that prison officials cannot be held accountable "under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979, 128 L. Ed. 2d 811 (1994).  "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation,

cannot . . . be condemned as infliction of punishment." *Id*. at 848. "Thus, the official must have a subjectively sufficiently culpable state of mind." *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (internal citations omitted). "Likewise, in addition to the subjective awareness of the relevant risk, *Estelle* requires that plaintiff show more than mere negligence to establish a violation of the Eighth Amendment. . . ." *McElligott*, 182 F.3d 1248, 1255 (11th Cir. 1999); citing *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

Plaintiff has failed to make a sufficient showing that Defendants were deliberately indifferent to his serious needs. Although Plaintiff states in conclusory terms that assaults were overlooked while he was incarcerated at Rutledge State Prison, that he was not separated from violent inmates, and that he had to pay other inmates to avoid being assaulted, he has fully failed to present evidence establishing a likelihood that an injury to his health has been caused or will be caused in the future by the actions, or lack thereof, of the Defendants.[4] Thus, Plaintiff has failed to satisfy the objective prong of an Eighth Amendment claim. Accordingly, Plaintiff has failed to state a cognizable Eighth Amendment claim with regard to his claims that the Defendants failed to protect him from other inmates.

## III.   Immunity

### A.   Quasi-Judicial Immunity

Defendant Gale Buckner has asserted the defense of quasi-judicial immunity from

---

[4]Plaintiff has filed two "emergency letters" with the court wherein he details a claim that he was sexually assaulted by officers (who are not defendants in this case) at Rutledge State Prison prior to his transfer to Valdosta State Prison. Those claims will be addressed at a later time.

Plaintiff's claims for monetary damages in this case.  (R26-2, p. 23).  Specifically, Defendant

Buckner contends that as the Chairman of the Georgia Board of Pardons and Paroles, she is

entitled to absolute quasi-judicial immunity.  *Id.*   The Eleventh Circuit Court of Appeals has

held that parole board members are entitled to absolute quasi-judicial immunity. *Holmes v.*

*Crosby,* 418 F.3d 1256, 1258 (11th Cir. 2005); *Fuller v. Georgia State Bd. of Pardons and*

*Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988).  Therefore, Defendant Buckner should be

dismissed from this action.

### B.    Eleventh Amendment Immunity

The Defendants have further asserted the defense of Eleventh Amendment immunity

with regard to any claims made against them in their official capacities.  (R-25-2, p. 24).  The

Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United

States shall not be construed to extend to any suit in law or equity, commenced or prosecuted

against one of the United States by Citizens of another State, or by Citizens or Subjects of

any Foreign State."   To determine whether a defendant is immune from liability under the

Eleventh Amendment, the Eleventh Circuit Court of Appeals has held that "...a defendant

need not be labeled a 'state officer' or 'state official,' but instead need only be acting as an

"arm of the State," which includes agents and instrumentalities of the State." *Manders v. Lee,*

338 F.3d 1304, 1308 -1309 (11th Cir. 2003); citing *Regents of the Univ. of Cal. v. Doe,* 519

U.S. 425, 429-30, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997).  The Court, in *Manders*, set out the

four factor test used to ascertain whether an entity is an "arm of the State" in carrying out the

function at issue: "(1) how state law defines the entity; (2) what degree of control the State

maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Manders* at 1309; citing *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm.,* 226 F.3d 1226, 1231-34 (11th Cir.2000) (additional citations omitted).  The Defendants in this case are all employed by the State of Georgia, either as employees of the Georgia Department of Corrections, the Georgia Board of Pardons and Paroles, or Rutledge State Prison (which is controlled by the Department of Corrections). The United States Supreme Court has held that the Eleventh Amendment bars claims against a State or one of its agencies, absent a waiver by the State or a valid congressional override, where the State is the real party in interest or when any monetary recovery would be paid out of state funds.  *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  In this case, the State of Georgia has not consented to being sued under 42 U.S.C. § 1983.  As "officials" of the State, therefore, the Defendants each receive the protection of the Eleventh Amendment given to states and may not be sued for compensatory damages.  Thus, Plaintiff's claims for compensatory damages against the Defendants in their official capacities must fail.

### C.   Qualified Immunity

The Defendants, in their individual capacities, further assert the defense of qualified immunity as to all claims alleged by Plaintiff in this case.  (R-26-2, p. 26).  Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no clearly established right of which a reasonable person would have known.  In sum, qualified immunity is a guarantee of fair warning.  *McElligott v. Foley*, 182 F.3d 1248

22

(11th Cir. 1999).  The Supreme Court has held that in a case against an officer in which the Plaintiff alleges a violation of his constitutional rights, the two requirements of this defense must be analyzed in the appropriate succession. *Suacier v. Katz*, 121 S.Ct. 2151, 2155 (2001). The first question is whether "[T]aken in the light most favorable to the party asserting the injury, do the facts show that the officer's conduct violated a constitutional right?" *Saucier*, 121 S.Ct at 2156; *Seigert v. Gilley*, 500 U.S. 226, 232 (1991).  On the facts of the case should they be established, if it is possible that a jury could find that a constitutional deprivation had occurred, the Court must then decide whether the right violated was clearly established at the time of the alleged wrongful acts. *Saucier* at 2156.  "The contours of the right must be sufficiently clear that a reasonable official would understand that he was doing violates that right." *Id.*

To receive qualified immunity, a defendant must first establish that he was acting within his discretionary authority.  *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007). In this case, the facts as alleged by Plaintiff clearly establish that Defendants were exercising discretionary authority as prescribed by relevant job duties when the allegedly unlawful acts took place. Furthermore, as has already been addressed by the Court,  Plaintiff's version of events fail to establish that any actionable constitutional violations have occurred.

In *Saucier v. Katz,* cited *supra,* the Supreme Court held that if none of the Plaintiff's constitutional rights were violated had the allegations been established, "there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001).  Here, such is the case.  The Plaintiff has failed to prove that any of the rights

guaranteed to him through the United States Constitution were violated by the Defendants. Therefore, no further analysis is required.  Therefore, it is recommended that Defendants are entitled to qualified immunity as to claims made against them in their individual capacities.

## IV.    Injunctive Relief

In his various pleadings, Plaintiff repeatedly seeks injunctive relief in the form of protection from the Defendants, as well as an investigation into his claims.  Inasmuch as Plaintiff has already been transferred from the Muscogee County Jail into the Georgia State Prison system, Plaintiff's claims for injunctive relief are now moot.  *Zatler v. Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986); *See also Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) (per curiam) ("Absent class certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred.").  Therefore, Plaintiff's claims for injunctive relief should be dismissed.

## V.    Plaintiff's "Emergency Letters" to the Court

Following the filing of Plaintiff's complaint, Amended Complaint and Supplemental Complaint, he filed two "Emergency Letters" with the court.  (R-29, 32).  In his letters, Plaintiff contends that on February 18, 2009, his security level was raised and he was put on "lock-down" in retaliation for filing this case.  (R-29).  He further claims that on the same date, he was removed from his cell at Rutledge State Prison, handcuffed and his feet shackled.  *Id.*  He claims that he was then sodomized with a night stick and kicked.  *Id.*  He

24

then alleges that he was returned to his cell, wherein three razor blades were slid underneath

his cell door and he was told by the attackers to cut himself, which he claims he did after

having a "relapse."  *Id.*  He claims he was thereafter treated for the cuts at Columbus

Regional Hospital, transferred to Valdosta State Prison to heal and be hidden, and that he was

unable to inform the court of the events because all of his legal materials were taken from

him.  *Id.*  Plaintiff's second letter contains more details of the alleged assault and includes

claims that officers at Valdosta State Prison also beat him. (R-23).

  The claims alleged in Plaintiff's "Emergency Letters" contain new claims against

officers not named in his original, amended or supplemental complaints.  Federal Rule of

Civil Procedure 15(a), states that:

> A party may amend the party's pleading **once** as a matter of
> course at any time **before a responsive pleading is served** or,
> if the pleading is one to which no responsive pleading is
> permitted and the action has not been placed upon the trial
> calendar, the party may so amend it at any time within 20 days
> after it is served. **Otherwise a party may amend the party's
> pleading only** by leave of court or by written consent of the
> adverse party; and leave shall be freely given when justice so
> requires. A party shall plead in response to an amended pleading
> within the time remaining for response to the original pleading
> or within 10 days after service of the amended pleading,
> whichever period may be the longer, unless the court otherwise
> orders.

In this case, Plaintiff has amended his original complaint twice, by order of the court. The

claims alleged in his "emergency letters" are improperly filed under FRCP 15(a) as they

attempt to add completely new claims, occurring on different dates and involving different

parties, and do not relate back to the claims as originally asserted by Plaintiff.

## **CONCLUSION**

As stated above, to survive a Motion to Dismiss, Plaintiff's complaint must include sufficient factual allegations "to raise a right of relief above the speculative level" and "to raise a reasonable expectation that discovery will reveal evidence of" viable claims that his constitutional rights had been violated.  For the foregoing reasons, Plaintiff failed to do so. Therefore, Defendants' Motion to Dismiss should be granted and all pending motions filed by the Plaintiff should be dismissed as moot.

WHEREFORE, IT IS HEREBY RECOMMENDED that Defendants' Motion to Dismiss be GRANTED and Plaintiff's action be DISMISSED.  Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff may file objections to this Recommendation in writing with the UNITED STATES DISTRICT JUDGE within TEN (10) DAYS after being served with a copy hereof.

SO RECOMMENDED this 23rd day of October, 2008.


S/ G. MALLON FAIRCLOTH
UNITED STATES MAGISTRATE JUDGE


eSw